**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ED&F MAN CAPITAL MARKETS LTD. and ED&F MAN CAPITAL MARKETS MENA LTD., | |
| Plaintiffs, | |
| v. | Case No.  18-cv-5704 |
| JVMC HOLDINGS CORP. (f/k/a RJO HOLDINGS CORP.), JAMAL OULHADJ, and MUSTAPHA STEPHEN GHALLAMI, | Judge:  Hon. Joan H. Lefkow |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS OR STAY IN THE ALTERNATIVE**

## INTRODUCTION

Plaintiffs, ED&F Man Capital Markets Ltd. ("ED&F") and ED&F Man Capital Markets MENA Ltd. ("ED&F Mena") have brought this vexatious lawsuit in an effort to harass Defendants JVMC Holdings Corp. ("JVMC"), Jamal Oulhadj ("Oulhadj") and Stephen Ghallami ("Ghallami") (collectively "Defendants") across multiple continents. In fact, this is the second lawsuit Plaintiffs have brought against substantially the same parties relating to the same events. Plaintiffs' initial lawsuit, filed in the United Arab Emirates ("UAE"), was commenced months prior to this lawsuit, regarding the same series of events as the ones at issue here. To that end, in both actions Plaintiffs allege that by hiring and attempting to hire various employees of ED&F Mena, Defendants induced these employees to violate their employment agreements with ED&F Mena and divulge certain trade secrets specific to ED&F's Dubai operations. Despite the fact that these claims had little merit as initially brought in Dubai, Plaintiffs now wish to replicate these frivolous claims before this Court.

Here, Plaintiffs attempt to plead the following causes of action against all Defendants: (1) Violations of the Defend Trade Secrets Act ("DTSA"); (2) Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); (3) Tortious Interference with Contract; (4) Tortious Interference with Business Relations; (5) Unjust Enrichment, and (6) Tortious Inducement of Breach of Fiduciary Duty. However, not only are these claims without merit, they are also jurisdictionally defective. Specifically, Plaintiffs are improperly attempting to avail themselves of the DTSA without alleging the required jurisdictional nexus to interstate or foreign commerce. The trade secrets allegedly misappropriated by Defendants exclusively pertain to a foreign country, and all alleged acts of misappropriation occurred exclusively in a foreign country. To grant Plaintiffs relief would not only ignore Congress' express intent in passing the DTSA, but also the powers granted by the Constitution. Therefore, this claim cannot survive. As this is Plaintiffs' exclusive basis for federal jurisdiction, their remaining claims should be dismissed as well.

Even if the Court were to disregard this glaring jurisdictional defect, Plaintiffs' Complaint should be dismissed pursuant to the doctrine of *forum non conveniens*, as this is not a proper venue for this action and allowing Plaintiffs' claims to proceed would present an undue burden to Defendants and the Court. In fact, Plaintiffs' lawsuit in Dubai, which is substantially similar in every regard, only serves to demonstrate the availability of an adequate alternative forum for Plaintiffs' claims.

Finally, should the Court choose not to dismiss the Complaint in its entirety, this matter should alternatively be stayed pending the outcome of the Dubai action, which is nearing trial. The issues present in this case are likely to be resolved in their entirety at that trial. Thus, as a matter of judicial economy, this Court should decline to hear this parallel matter in order to curtail the vexatious nature of this lawsuit and avoid potentially duplicative results.

## FACTUAL BACKGROUND[1]

In early 2018, R.J. O'Brien Middle East and North Africa ("RJO Mena"), a subsidiary of JVMC began operating in Dubai, UAE. (Compl. ¶¶2, 6). Oulhadj, a resident of the UAE, is the Senior Executive Officer of RJO Mena. (*Id.* ¶7; Declaration of Sarah Anderson ("Anderson Dec."), ¶11). Ghallami, a resident of the UAE, is RJO Mena's secretary and operations manager. (Compl. ¶8; Anderson Dec., ¶10). As a new office operating in Dubai, RJO Mena hired various employees to staff its office, including Sayyed Hussain ("Hussain"). (Compl. ¶¶17, 29-30). According to Plaintiffs, RJO Mena "brib[ed]" Hussain to leave his employment at ED&F Mena with a pay increase. (*Id.* ¶ 32). Further, according to Plaintiffs, Hussain and other former employees of ED&F Mena disclosed Plaintiffs' "confidential information," including "salary and bonus structure and the revenue, account details, and profit and loss information for business [Hussain] generated," (*id.* ¶¶34-35) to RJO Mena.

The crux of Plaintiffs' Complaint revolves around an alleged "diverted trade" conducted by

---

[1] Except where noted, the content of this Factual Background section is taken entirely from the Complaint. Although Defendants disagree with many of the allegations contained therein, they recognize that Plaintiffs' allegations must be taken by this Court as true for the purposes of Defendants' Rule 12(b)(6) motion. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

Ghallami and Hussain. (*Id.* ¶3). According to Plaintiffs, on March 6 and 7, 2018, Hussain and Ghallami collaborated in an elaborate scheme to mislead a bank into conducting a trade through RJO Mena instead of ED&F Mena, and that Oulhadj thought of this plan. (*Id.* ¶¶36-38, 43-44).

In March 2018, Plaintiffs initiated an action in the Dubai International Finance Center ("DIFC") against RJO Mena, Ghallami, and Hussain (the "Dubai Action"). (*See* Anderson Dec. ¶13, Ex. SA-1/41). The Dubai Action focuses on primarily the same allegations and circumstances, namely, Hussain's departure from ED&F Mena for RJO Mena and the alleged "diverted trade." (*See* Anderson Dec. ¶¶14-16). Plaintiffs are seeking damages for loss of commission, clients and business opportunities, punitive or exemplary damages, equitable compensation, an account of profits, and injunctive relief against RJO Mena and Ghallami. (*Id.* ¶17). The Dubai Action is scheduled to proceed to trial on December 17, 2018. (*Id.* ¶13).

## ARGUMENT

### I.   Legal Standard

"Rule 12(b)(1) provides that a case will be dismissed if the court lacks the authority to hear and decide the dispute." *Green v. Chase Bank USA, NA*, 2012 WL 3961230, at *1 (N.D. Ill. Sep. 7, 2012); *see also RLJ Lodging Trust v. Nat'l Ret. Fund*, 2018 WL 4052171, at *3 (N.D. Ill. Aug. 24, 2018) ("A motion to dismiss pursuant to Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint."). "If subject matter jurisdiction is not evident from the face of the complaint, the court would analyze the motion to dismiss pursuant to Rule 12(b)(1) like any other motion to dismiss and assume for purposes of the motion that the allegations in the complaint are true." *Green*, 2012 WL 3961230, at *1.

When filing a complaint in federal court, "formulaic recitations of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Rather, a plaintiff must allege facts that establish a claim to relief that is "plausible on its face." *Id.* at 678. "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. This Court Does Not Have Subject Matter Jurisdiction to Hear Plaintiffs' DTSA Claims

The DTSA, vests federal district courts with original jurisdiction to decide civil cases involving the misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Failure to allege such a nexus to interstate or foreign commerce is a, "deficiency, [which] in itself, warrants dismissal of plaintiffs' DTSA claim." *Gov't Employees Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 173 (E.D. Penn. 2017); *Hydrogen Master Rights, Ltd. V. Weston*, 228 F. Supp. 3d 320, 337-38 (D. Del. 2017) (dismissing DTSA claim where complaint failed to allege any nexus between interstate or foreign commerce and the alleged trade secrets). This "interstate or foreign commerce" requirement is jurisdictional. *Gov't Employees*, 262 F. Supp. 3d at 173.

"Foreign commerce" does not include commerce that is exclusively affecting a foreign country. Rather, courts presume that federal statutes should not apply extraterritorially. *See RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2108 (2016) (holding that although the RICO can apply extraterritorially, its private right of action does not apply extraterritorially and requires a domestic injury); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991) (it is a "longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'"). While the DTSA may apply to foreign acts by U.S. citizens, *see* 18 U.S.C. § 1837, the DTSA does not apply to exclusively foreign trade secrets that have no bearing on the U.S., nor has any court applied the DTSA to apply to trade secrets of foreign corporations with no impact on U.S. commerce.

The DTSA's jurisdictional requirement regarding "foreign commerce" does not mean that the trade secret or the business it impacts is in a foreign country. Rather, the DTSA is designed to protect

U.S. trade secrets that affect U.S. commerce *with* foreign nations. While the DTSA does not define "foreign commerce," it would go beyond any precedent set by Congress or the courts to extend the definition to include commerce exclusively within a foreign country. To that end, the Commerce Clause of the U.S. Constitution states that Congress shall have the power "[t]o regulate Commerce *with* foreign Nations." U.S. Const. art. I, § 8, cl. 3 (emphasis added). It would be beyond the pale to assume that Congress expanded its powers to regulate commerce exclusively in a foreign nation.

This is further demonstrated by the legislative intent behind the DTSA. In fact, both chambers of Congress expressly stated their intent to protect U.S. businesses and trade secrets. To that end, the Senate stated:

> Trade secrets are a form of intellectual property that allow for the legal protection of commercially valuable, proprietary information and make up an increasingly important part of *American companies'* intellectual property portfolios. Comprising all types of financial, scientific, technical, engineering, or other forms of information, trade secrets are an integral part of the operation, competitive advantage, and financial success of many *U.S.-based companies*.

Sen. Rep. 114-220, at 1 (2016) (emphasis added), thereby underscoring that the purpose behind the DTSA was to protect U.S.-based companies. Moreover, the House of Representatives stated:

> The *trade secrets of American companies* are increasingly at risk for misappropriation by thieves… American businesses that compete globally will lose their competitive edge if they cannot quickly pursue and stop thieves looking to shortcut the innovative products, designs and processes that have fueled our economy. This bill will equip companies with the additional tools they need to protect their proprietary information, to preserve and increase jobs and promote growth *in the United States*, and to continue to lead the world in creating new and innovative products, technologies, and services.

H.R. Rep. No. 114-529, at 3, 6 (2016) (emphasis added). Nowhere does the legislative history refer to Congress' desire to protect foreign nations and their economic positions. Accordingly, in order to allege any nexus to "interstate or foreign commerce," a plaintiff must allege the misappropriation of a trade secret affecting commerce either between states within the U.S. or between the U.S. and a foreign nation. A failure to do so will require dismissal for lack of subject matter jurisdiction. *See Gov't Employees*, 262 F. Supp. 3d at 173; H.R. Rep. No. 114-529, at 9.

Plaintiffs have failed to adequately allege that the trade secrets purportedly misappropriated by Defendants had any nexus to "interstate or foreign commerce," but rather offer a conclusory, threadbare recital of this element with no support. In fact, Plaintiffs have only alleged misappropriation of foreign trade secrets in a foreign country. Specifically, the trade secrets allegedly misappropriated all pertain to ED&F Mena's business in Dubai, including "trade revenues that Hussain generated…all management and business operations in Dubai, recruitment plans, information concerning payouts, potential products under consideration by Plaintiffs, hiring strategy, and information relating to key brokers including contact and other personal information." (Compl. ¶ 51). Plaintiffs do not offer any facts to show any of these supposed trade secrets had any nexus to U.S. interstate or foreign commerce in any way. Additionally, Plaintiffs are not operating within the U.S., but rather ED&F is based in the United Kingdom, and ED&F Mena is based in the UAE. Plaintiffs are attempting to abuse the U.S. court system to adjudicate issues that have no bearing at all on this country or its laws in a blatant effort to harass Defendants. On these grounds alone, the Complaint is jurisdictionally deficient and should be dismissed.

### III.   The Court Should Decline Supplemental Jurisdiction Over The Remaining Claims

A district court "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors…will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, n.7 (1988). Plaintiffs' entire purported basis for federal jurisdiction is their DTSA claim. Since this claim must be dismissed for the aforementioned reasons, this Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss this matter in its entirety.

### IV.   ED&F Has Failed to State a Claim Under the Illinois Consumer Fraud Act

Even if the Court were to exercise supplemental jurisdiction over Plaintiffs' state law claims, Plaintiffs have failed to state a claim under the ICFA, 815 ILCS § 505/1 *et seq.*, against any of the Defendants as they have yet again failed to plead the required jurisdictional nexus. The ICFA "does not apply to fraudulent transactions which take place outside Illinois." *Vulcan Golf, LLC v. Google. Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008). A party may only pursue a private cause of action under the ICFA "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Ins.*, 216 Ill. 2d 100, 187 (2005).

Plaintiffs have not alleged that any wrongdoing in relation to this claim occurred in Illinois. Rather, Plaintiffs claim that Defendants violated the ICFA through a "diverted trade," which occurred in Dubai and had no nexus to Illinois. The ICFA is not designed to protect against actions that did not occur within the state, let alone another country, and therefore, Claim Two of Plaintiffs' Complaint should be dismissed in its entirety.

**V.    ED&F Has Failed to Allege Substantial Involvement of RJO Mena's Parent Company, JVMC**

Assuming arguendo and without conceding that Plaintiffs have stated a DTSA claim (which they have not), all claims against JVMC should still be dismissed because "[a]s a general principle, a parent corporation is not liable for the act of its subsidiaries." *Holmes v. United Airlines, Inc.*, 2012 WL 245136, at *6 (N.D. Ill. Jan. 25, 2012). "Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for these torts." *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 540 (7th Cir. 1998).

**a.    Plaintiff Has Failed to Allege that the Court Should Pierce the Corporate Veil Between RJO Mena and JVMC**

A plaintiff may pierce the corporate veil if two elements are satisfied: (1) there is "such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist"; and (2) "circumstances must be such that adherence to the fiction

of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985). "Only when a plaintiff fairly alleges an entity exits as the alter ego of another and provides factual manifestations suggesting the existence that the two operate as a single entity will a motion to dismiss be denied." *Holmes*, 2012 WL 245136, at *6 (internal citations omitted). All allegations of wrongdoing in Plaintiffs' Complaint revolve around the alleged actions of RJO Mena and its employees. The Complaint is devoid of any allegations that JVMC is the alter ego of RJO Mena or that the two operate as a single entity. Therefore, there are no allegations present in the Complaint sufficient to pierce the corporate veil.

### b. Plaintiff Has Failed to Allege Direct Participant Liability of JVMC

Alternatively, the doctrine of direct participant liability "is a rarely-discussed exception to the usual requirements of piercing the corporate veil." *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 833 (N.D. Ill. 2007). Under the "direct participant" theory, a parent corporation may be held liable if "there is sufficient evidence to show that the parent corporation directed or authorized the manner in which the activity is undertaken." *Destiny Health*, 741 F. Supp. 3d 901, 907 (N.D. Ill. 2010). The key elements of the application of this theory are (1) "parent's specific direction or authorization of the manner in which an activity is undertaken" and (2) "foreseeability." *Grady v. Ocwen Loan Servicing*, LLC, 2014 WL 231952, at *3 (N.D. Ill. Jan. 21, 2014) (citing *Forsythe v. Clark USA, Inc.*, 864 N.E. 2d 227, 242 (Ill. 2007)). This test focuses on the degree to which a corporation used its ownership interest in another corporation to "command rather than merely cajole" the alleged wrongdoing. *Cima v. WellPoint Health Networks, Inc.*, 556 F. Supp. 2d 901, 905 (S.D. Ill. 2008). "Simply being aware of, sanctioning, and supporting actions taken by [a subsidiary] does not amount to mandating a particular course of action and carrying it out through specific direction and authorization." *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, 2012 WL 1886440, at *10 (N.D. Ill. May 22, 2012).

Plaintiffs have failed to allege any actions that JVMC took to further perpetuate the alleged "scheme" to hire employees from Plaintiffs at RJO Mena. Rather, Plaintiffs merely allege that "Upon information and belief, Defendants' scheme was orchestrated and controlled from RJO's headquarters in Chicago, which exercises control over all of its subsidiaries including RJO Mena. In order to effectuate its plan, RJO relied on officers and directors of RJO, RJO Associates and RJO Mena." (Compl. ¶ 28). Plaintiffs do not allege any specific details as to how JVMC "orchestrated and controlled" RJO Mena. At most, Plaintiffs rely on their allegations that Oulhadj is both an officer of JVMC and RJO Mena. However, they do not state the Oulhadj performed any alleged acts of wrongdoing outside of his role as the Chief Executive of RJO Mena. These threadbare allegations fall short of the required showing that a parent corporation directly participated in wrongdoing.

Therefore, no liability can be imputed to JVMC under a direct participant theory. Plaintiffs have vexatiously brought its claims against JVMC in an attempt to abuse the United States Court system as they could not bring claims against RJO Mena in the United States. As Plaintiffs cannot, and indeed have not, alleged any wrongdoing on the part of RJO Mena's holding company, all claims against JVMC should be dismissed.

## VI. Venue is Inappropriate Pursuant to the Doctrine of *Forum Non Conveniens*

The doctrine of *forum non conveniens* allows a court to dismiss a case "if it best serves the convenience of the parties and the ends of justice." *In re Bridgestone/Firestone*, 420 F.3d 702, 703 (7th Cir. 2015). A district court may dismiss a case on *forum non conveniens* grounds when it determines that there are "strong reasons for believing it should be litigated in the courts of another, normally a foreign, jurisdiction." *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015). While there is generally a presumption in favor of the venue chosen by the plaintiff, "[w]hen a plaintiff's choice is not his home forum, however, the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate in such cases is less reasonable."

*Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430 (2007) (internal citations omitted); *see also Stroitelsvto Bulgaria Ltd. v. Bulgarian-American Enter. Fund*, 598 F. Supp. 2d 875, 882 (N.D. Ill. 2009) ("This district is not Plaintiff's 'home' forum, and thus, Plaintiff's decision to litigate in the United States is entitled to less deference.") A case may be dismissed for *forum non conveniens* when: "(1) there is an available and adequate alternative forum that has jurisdiction over the case; and (2) the balance of private and public interest factors weighs in favor of dismissal." *Id.* at 881.

**a.  Dubai is an Adequate Alternative Forum**

An alternative forum is adequate when "parties will not be deprived of all remedies or treated unfairly." *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997) (internal citations omitted). "A court may dismiss on forum non conveniens grounds even though the foreign forum does not provide the same range of remedies as are available in the home forum. However, the alternative forum must provide some potential avenue for redress." *Id.*

Plaintiff has merely brought its claims in this District in an effort to harass Defendants, and this matter is better suited to be heard in Dubai, where a substantially similar matter is already pending. To that end, Plaintiffs initiated the Dubai against Ghallami and RJO Mena in March, 2018. While Oulhadj was not named in this action, he is also a full-time resident of the UAE, and therefore could have been named as well. Moreover, Oulhadj is the Senior Executive of RJO Mena, a Defendant in the Dubai Action. While JVMC would likely not be subject to jurisdiction in Dubai, this is inconsequential to the court's analysis regarding an alternate forum because, as discussed above, Plaintiffs have failed to state a claim against JVMC in this case, and therefore could not pursue their claims against JVMC, regardless of forum.

Additionally, it is clear that the courts in Dubai offer an adequate alternative as Plaintiffs previously initiated a suit there based on the same series of events. While there may be some remedies available in courts in the United States that are unavailable in Dubai, Plaintiffs are entitled to "some

potential avenue for redress" for their claims in the Dubai Action. In fact, the remedies available to Plaintiffs in the two forums are substantially similar. In the Dubai Action Plaintiffs have requested monetary relief, including exemplary damages, and injunctive relief against RJO Mena and Ghallami. (*See* Anderson Dec. ¶ 17; Ex. SA-1/55-57). Therefore, Dubai is undoubtedly an available and adequate alternate forum that has jurisdiction over this case.

### b. The Balance of Private and Public Factors Requires Dismissal

After determining whether there is an adequate alterative forum, the Court must balance the private and public interest factors that emerge in a given case. *Kamel*, 108 F.3d at 803. Further, "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *U.S.O. Corp. v. Mizuho Holding Corp.*, 547 F.3d 749 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248-51 (1981)). The factors pertaining to the private interests of the litigants include: "the relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling witnesses; the cost of obtaining the attendance of willing witnesses; the possibility of viewing the premises, if necessary; and all other practical problems that make trial of a case easy, efficient and economical." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947).

Here, the private interests of the parties clearly show that the Dubai is a more appropriate venue for this action. As an initial matter, the Northern District of Illinois is not the home forum of either Plaintiff. In fact, Plaintiffs are actually based in the United Kingdom and Dubai. Thus, there is no presumption in favor of Plaintiffs' choice of forum, and Plaintiffs are unable to offer any specific reason of convenience supporting their choice. Further, Plaintiffs' choice of forum imposes a heavy burden on both individual Defendants and the Court. Both individual Defendants are residents of Dubai. Forcing these individuals to come back to Illinois repeatedly, when there is already an action pending in Dubai, would place an extreme cost and burden on each. Moreover, all of the relevant

witnesses and events as alleged in the Complaint are located in Dubai. Most notably, Hussain, who is undoubtedly a necessary witness, is located in Dubai beyond the compulsory reach of the Court.

Finally, public interest does not favor this forum, as all of the relevant events to this case happened outside of the United States. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 260 (1981) ("[T]here is a local interest in having localized controversies decided at home." (internal citations omitted)). Further, the laws of the UAE, rather than Illinois, would likely be applied to all of Plaintiffs' common law causes of action because Dubai has the most significant relationship to each of the claims. Therefore, public interest favors dismissal. *See id.*, n. 29 ("Many forum non conveniens decisions have held that the need to apply foreign law favors dismissal.") Accordingly, the Complaint should be dismissed pursuant to the doctrine of *forum non conveniens.*

## VII. The Court Should Stay This Proceeding Pending the Outcome of Parallel Proceedings in Dubai

Should the Court choose not to dismiss the Complaint for the aforementioned reasons, this action should be stayed pending the outcome of the Dubai Action. Pursuant to the Supreme Court's holding in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), a district court may abstain from hearing a suit and "await the outcome of parallel proceedings as a matter of 'wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'" *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (quoting *Colorado River*, 424 U.S. at 817). While *Colorado River* concerned a concurrent state proceeding, "in the interests of international comity, we apply the same general principles with respect to parallel proceedings in a federal court." *Finova*, 180 F.3d at 898.

### a. The Proceedings Are Parallel

A court's decision to stay proceedings involves a two-step analysis. As an initial matter, the Court must first determine whether the federal and foreign proceedings are parallel. *Id.*; *see also Global Materials Tech., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 2013 WL 80369, at *6 (N.D. Ill. Jan. 7, 2013) ("the

Court must first ask whether the federal and state cases – cases, not individual causes of action—are parallel.") "[T]he requirement is of parallel suits, not identical suits. A suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)

The parties in this matter and the Dubai Action, while not identical, are undoubtedly parallel. The Plaintiffs in both matters are the same. Ghallami is named as a defendant in both matters. While Oulhadj is not a defendant in the Dubai Action, RJO Mena is. Here, Plaintiffs have replaced RJO Mena with Oulhadj, essentially imputing their allegations against RJO Mena in the Dubai Action to Oulhadj. Plaintiffs' efforts to change the parties by adding JVMC are ineffective as they have not only failed to state a claim against JVMC, but further because merely naming additional parties does not overcome parallelism of the proceedings. *See Brodsky v. Blake*, 2018 WL 1138539, at *10 (N.D. Ill. Mar. 2, 2018) ("if the law required strict similarity, parties could avoid the doctrine of *Colorado River* by the simple expedient of naming additional parties") (internal citation omitted).

Additionally, there can be no doubt that the issues in this matter are substantially similar to those in the Dubai Action. Here, Plaintiffs have essentially alleged (1) misappropriation of trade secrets (Compl., Count One); (2) tortious interference with contract (namely, the employment agreement of Hussain) (*id.*, Count Three); (3) tortious interference with business relations (regarding the "diverted trade") (*id.*, Count Four); (4) unjust enrichment (*id.*, Count 5); and (5) tortious inducement of breach of fiduciary duty (of Hussain) (*id.*, Count 6).[2] In the Dubai Action, Plaintiffs allege that (1) Defendants induced or procured breaches of contract by Hussain (his employment agreement) (Anderson Dec., Ex. SA-1/48, 53); (2) RJO Mena and Ghallami conspired with Hussain to damage ED&F's business by unlawful means (with the diverted trade) (*id.* p. 48); (3) RJO Mena and Ghallami misused ED&F's confidential information, including its client details, client lists and

---

[2] Plaintiffs have additionally alleged a violation of the ICFA, but as discussed *supra*, this claim has no merit.

details of trades (*id.* pp. 48, 53); and (4) RJO Mena and Ghallami assisted or procured breaches of other legal duties owed by Hussain to ED&F Mena (fiduciary duties). (*Id.* p. 53). Clearly, "the granting of relief in one forum would dispose of the claims raised in the other," *Finova*, 180 F.3d at 898, and thus, the Dubai Action and this litigation are parallel.

### b. Upon Balance, The Factors Weight in Favor of a Stay

After a court determines that proceedings are parallel, it will "balance the considerations that weigh in favor of, and against, abstention." *Finova*, 180 F.3d at 898. In doing so, the court considers the following factors: (1) the identity of the court that first assumed jurisdiction over the property; (2) the relative inconvenience of the federal forum; (3) the need to avoid piecemeal litigation; (4) the order in which the respective proceedings were filed; (5) whether federal or foreign law provides the rule of decision; (6) whether the foreign action protects the federal plaintiff's rights; (7) the relative progress of the federal and foreign proceedings; and (8) the vexatious or contrived nature of the federal claim. *See Colorado River*, 424 U.S. at 818; *Finova*, 180 F.3d at 898-99. No factor alone is determinative, but rather "[t]he decision to abstain is based on an assessment of the totality of the circumstances." *Id.* at 900.

Here, the most relevant considerations point towards the entry of a stay. First, as described above, this forum is inconvenient to everyone involved in this litigation. To that end, Plaintiffs and both individual Defendants are located in Dubai, along with all relevant witnesses and documents. The majority of Plaintiffs' allegations revolve around the employment of various individuals, most importantly Hussain, who reside in Dubai and thus are not subject to this Court's jurisdiction.

Second, the Dubai Action was initiated several months before, and has progressed substantially further, than this lawsuit. The Dubai Action was initiated in March, 2018 and is due to start trial in December, while this lawsuit was not initiated until August 2018, and has not progressed in a meaningful way at this time. Plaintiffs chose to pursue litigation in Dubai months before this

forum and have progressed through almost all stages of litigation there, which substantially tilts the balance in favor of a stay. *See Interstate Material Corp.*, 847 F.2d at 1289 ("In balancing this factor it is appropriate to note that [plaintiff] filed both actions and chose to file in state court first.")

Third, a stay would serve to prevent piecemeal litigation, which could result in "duplicative and wasteful litigation with the potential of inconsistent resolutions of the issue." *Restoration Servs., LLC v. R&R Boardwalk, LLC*, 2017 WL 5478304, at *6 (N.D. Ill. Nov. 15, 2017). As detailed above, the claims are substantially the same in both litigations, and thus, there is risk of inconsistent findings on numerous claims. Given that the claims in the Dubai Action will be resolved in a matter of months, it would be within the interests of judicial economy to stay this case pending the resolution of that Action, thereby avoiding any risk of duplicative or inconsistent resolutions.

Finally, Plaintiffs' motives in bringing this lawsuit were clearly vexatious. To that end, the individual Defendants are both preparing for trial in the Dubai Action, and now are being forced to defend suits in multiple continents. Plaintiffs have no purpose in bringing this lawsuit, at this time, other than to harass Defendants. In fact, "there is no need to comment adversely on [Plaintiffs'] motives to conclude that, because [their] federal court claims closely track [their foreign claims], the federal suit is 'vexatious' and 'contrived.'" *Kane v. Bank of Am., N.A.*, 2017 WL 2243055, at *5 (N.D. Ill. May, 23, 2017). Thus, upon balancing the factors, it is clear that as a matter of "wise judicial administration" the Court should stay this case pending the outcome of the Dubai Action.

## CONCLUSION

For the foregoing reasons, Defendants JVMC Holdings Corp., Jamal Oulhadj and Mustpaha Stephen Ghallami respectfully request that this Court grants their Rule 12(b)(1) and 12(b)(6) motions and dismiss the Complaint in its entirety, or, in the alternative, stay the action pending resolution of the parallel proceeding in Dubai.

Dated:  October 29, 2018

Respectfully submitted,

By:  _/s/ Daniel F. Lanciloti_

Daniel F. Lanciloti
dlanciloti@freeborn.com
Gillian B. Lepore
glepore@freeborn.com
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606
Telephone:   312.360.6000
Facsimile:    312.360.6520

Attorneys for Defendants
JVMC Holding Corp., Jamal Oulhadj, and
Stephen Ghallami

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on the date shown below she caused the foregoing document to be electronically filed with the Clerk for the U.S. District Court for the Northern District of Illinois, which will send a notification and a copy of the document to all counsel of record.

Dated: October 29, 2018

/s/ Gillian B. Lepore

*Attorney for Defendants*