IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ED&F CAPITAL MARKETS LTD,** *et al.* ) ) ) **Plaintiffs,** ) ) v. ) ) **JVMC HOLDINGS CORP.** ) **(f/k/a/ RJO HOLDINGS CORP.),** *et al.* ) ) **Defendants.** ) | No. 18 C 5704 **District Judge Steven C. Seeger** **Magistrate Judge Jeffrey Cummings** |

### MEMORANDUM OPINION AND ORDER

Plaintiffs ED&F Capital Markets Ltd., ED&F Man Financial Services Holdings Ltd., and ED&F Man Financial Capital Markets MENA Ltd. (collectively "plaintiffs") brought this action against defendants JVMC Holdings Corp., Gerald Corcoran, Jamal Oulhadj, and Daniel Staniford (collectively "defendants") for the alleged violation of the federal Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. and seven state law counts including breach of contract, breach of business relations, and unjust enrichment. (Dckt. #37). Plaintiffs and JVMC Holdings are commodities and futures brokers who operate in over 60 countries. Plaintiffs allege that defendants used "bribery, theft, and deceit" to infiltrate plaintiffs' business in Dubai, United Arab Emirates in order to establish their own operation there. (*Id*. at ¶1). Currently before the Court is defendants' motion for a protective order seeking to destroy certain documents that were previously produced to plaintiffs. For the reasons discussed below, defendants' motion is denied.

1

**I.     BACKGROUND**

Plaintiff ED&F Man is a London-based brokerage company that operates world wide and is a wholly-owned subsidiary of ED&F Man Holdings.  ED&F Man Holdings is also the parent company of ED&F MENA [Middle East and North Africa].  Defendant JVMC Holdings – which plaintiffs refer to in their Amended Complaint by its former name as RJO Holdings ("RJO") – is a Delaware corporation with its principal place of business in Chicago.  RJO is the parent company of R.J. O'Brien MENA and R.J. O'Brien Associates LLC.  Defendant Corcoran is the CEO of R.J. O'Brien Associates; defendant Oulhadj is the COO of RJO and the CEO of R.J. O'Brien MENA; and defendant Staniford is the Executive Director of R.J. O'Brien Associates and a Director of R.J. O'Brien MENA.

Plaintiffs allege that RJO and the individual defendants began soliciting three of plaintiffs' key employees – whom they refer to as the "Corrupted Employees" – beginning in late 2016 to enable RJO to open an office in Dubai that could compete with plaintiffs' operation there.  (Dckt. #37 at ¶¶ 39-40).  These employees then signed employment agreements with RJO while they were still employed by plaintiffs and were bound by restrictive covenants and non-compete agreements that they had previously signed.  (*Id*. at ¶¶ 29, 31-33, 48).  The Corrupted Employees began working for R.J. O'Brien MENA in 2018; allegedly diverted plaintiffs' clients to RJO's new Dubai operation; and disclosed confidential information to defendants.  (*Id*. at ¶¶58, 62, 64).  Plaintiffs allege that their revenue has decreased by $5.9 million as a result of defendants' actions.  (*Id.* at ¶66).

On December 21, 2018, plaintiffs issued their first requests for document production, which led to a nine-month production by defendants of 7,000 documents that included nearly 20,000 pages.  (Dckt. #126 at 3) ("the Original Production").  The production was made subject

to the parties' February 4, 2019 Confidentiality Order, which was later superseded on November 15, 2019 by an Agreed Amended Confidentiality Order (the "Amended Order"). (Dckt. ##31, 103). The original Order permitted a producing party to designate confidential documents as limited to "attorney's eyes only" ("AEO") when a party determined that "the disclosure of [them] will result in a defined and serious injury." (Dckt. #31 at ¶3).

In early June 2019, defendants' previous counsel withdrew from this case. New counsel for the individual defendants and for the corporate defendant appeared on June 5, 2019 and August 14, 2019, respectively. (Dckt. ##60-62, 82). Defendants' new counsel concluded that prior counsel had inadvertently turned over some highly-sensitive materials in the Original Production that were irrelevant to plaintiffs' claims. (Dckt. #114 at 2).[1] This allegedly included RJO's board minutes and presentations concerning some of RJO's subsidiaries, financial issues, strategic plans, and documents involving regulatory matters. (*Id*.). Accordingly, defendants provided plaintiffs with a replacement production ("the Altered Production") on December 4, 2019 that redacted some of the previous materials and altered the confidentiality designations of a number of documents. (*Id*. at 2-3). The Altered Production was accompanied by a letter explaining that some new documents had also been included; that the reproduced documents had the same numbering as before; and that some of the earlier documents had been replaced with blank pages. Defendants also requested that plaintiffs "destroy all previously produced documents" and provide a certification of having done so. (*Id*. at Ex. A). On December 16, 2019, defendants made an additional production of documents to correct some of the December

---

[1] Defendants are bound by the actions of their prior counsel, *see, e.g., United States v. Di Mucci,* 879 F.2d 1488, 1496 (7th Cir. 1989); *Tolliver v. Northrop Corp.,* 786 F.2d 316, 319 (7th Cir. 1986), and they do not argue to the contrary. As such, defendants' "new counsel must stand in the shoes of [their] prior advocates – regardless of how worn they may be – and pick up where prior counsel left off." *Summy-Long v. Pennsylvania State Univ.,* No. 1:06-CV-1117, 2015 WL 5924505, at *3 (M.D.Pa. Oct. 9, 2015).

4 confidentiality designations and again requested plaintiffs to destroy the Original Production. (*Id*. at Ex. B). Plaintiffs refused to do so, however.

## II. DISCUSSION

Defendants argue that their prior counsel inadvertently turned over material in the Original Production that was both highly sensitive and irrelevant to plaintiffs' claims and they have demanded that plaintiffs destroy those parts of the Original Production that were redacted or removed in their Altered Production. Defendants filed this motion after plaintiffs failed to "honor" their Altered Production. (Dckt. #114 at 8). As the parties seeking a protective order, defendants bear the burden of demonstrating why the order should be entered. *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd*., 133 F.Supp.3d 1079, 1084 (N.D.Ill. 2015). In order to do so, defendants must show "good cause" and explain why they will be subjected to "annoyance, embarrassment, oppression, or undue burden or expense" if a protective order is not entered. Fed.R.Civ.P. 26(c)(1); *see also Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co*., 178 F.3d 943, 944 (7th Cir. 1999).

After consideration of the parties' arguments and the applicable law, the Court finds for the following reasons that defendants have failed to establish "good cause" for the entry of the protective order they seek: (1) defendants have offered no legal authority to support their argument that plaintiffs should be ordered to destroy or return inadvertently produced documents that are irrelevant to their claims; (2) defendants have failed to show why the Amended Order is not sufficient to protect any highly sensitive and confidential materials that they have produced; and (3) defendants have failed to substantiate the harm they claim they will suffer if their proposed protective order is not entered. The Court further finds that defendants must pay

plaintiffs' reasonable expenses incurred in opposing their motion pursuant to Rule 37(a)(5)(B) because defendants were not substantially justified in filing their motion.

  **A. Defendants Have Offered No Legal Authority To Support Their Assertion That Plaintiffs Must Be Ordered To Destroy The Irrelevant Documents That Defendants Inadvertently Produced**

The Federal Rules of Civil Procedure address the circumstances under which documents produced in discovery can be clawed back or destroyed in Rule 26(b)(5)(B), which allows a party to seek such relief for inadvertently produced documents that are "subject to a claim of privilege or of protection as trial-preparation material." Fed.R.Civ.P. 26(b)(5)(B). As plaintiffs have pointed out without contradiction, however, defendants' "requested relief has nothing to do with protecting inadvertently produced privileged material." (Dckt. #126 at 2). Instead, defendants assert that the materials in question should be destroyed because they are irrelevant to plaintiffs' claims.

It is well settled that the "inadvertent disclosure of a document not within the scope of relevance is not one of those circumstances" under which Rule 26(b)(5)(B) provides relief. *Guttormson v. ManorCare of Minot ND, LLC,* No. 4:14-CV-36, 2016 WL 3853737, at *5 (D.N.D. Jan. 6, 2016); *Laub v. Horbaczewski,* 331 F.R.D. 516, 524 (C.D.Cal. 2019) (same); *United States v. 753.95 Acres of Land, More or Less, in Washoe Cty.,* No. 308-CV-0386-BESVPC, 2009 WL 2045706, at *2 (D.Nev. July 10, 2009) ("documents subject to relevancy objections should not be given 'claw-back' protections afforded to those subject to attorney-client privilege or the work product doctrine"); *Adelman v. Coastal Select Ins. Co.,* No. 9:17-CV-3356-DCN, 2019 WL 465600, at *2 (D.S.C. Feb. 6, 2019) (noting that defendant "cites no legal basis to claw back irrelevant information"). Consequently, courts have held that there is "no

5

legal basis to require that other parties destroy or return" inadvertently produced irrelevant documents. *Guttormson*, 2016 WL 3853737, at *5; *Laub,* 331 F.R.D. at 524 (same).[2]

Although plaintiffs cited to this line of authority in their response (Dckt. #126 at 9), defendants did not address or try to distinguish it in their reply. Instead, defendants rely on a number of inapposite cases that concern situations where parties either sought a protective order to redact sensitive and irrelevant information from documents *before* producing them or sought to compel the production of documents that had already been withheld or redacted on the grounds of irrelevance. (Dckt. #114 at 4-6) (citing cases). The Court has no disagreement with the cases cited by defendants. However, seeking to apply these cases to the situation at hand is akin to debating how far (if at all) to open the barn door *after* the horses have already run out of the barn. Defendants' "disclosure of the documents 'albeit inadvertent, has already occurred and cannot be undone.'" *Laub,* 331 F.R.D. at 525, *quoting 735.95 Acres of Land,* 2009 WL 2045706 at *3. The only remaining questions are whether "defendants' concerns can be properly addressed" through the parties' Amended Confidentiality Order (*Id.*), and – if not – whether defendants have met their burden of establishing the need for a protective order with additional protective provisions.

---

[2] The only exception to this rule is where the court has entered a protected order that allows for the claw back of inadvertently produced irrelevant documents. *See, e.g., Moses H. Cone Mem'l Hosp. Operating Corp. v. Conifer Physician Servs., Inc.,* No. 1:13CV651, 2016 WL 430494, at *5-6 (M.D.N.C. Feb. 3, 2016). The Amended Order has no such provision and it provides for the destruction of documents produced in discovery only upon the conclusion of the litigation. (Dckt. #103 at 9-10).

B.  **The Amended Order Sufficiently Addresses Defendants' Concerns Regarding The Highly Sensitive Documents That They Inadvertently Produced**

Even if all of the information that defendants redacted in the Altered Production were irrelevant and highly sensitive,[3] defendants have failed to show that the Amended Order is insufficient to address their concerns. Surprisingly – given the strong emphasis that defendants place on the documents' alleged sensitivity – defendants do even address the potential applicability of the Amended Order in their motion. Plaintiffs assert, by contrast, that the Amended Order is sufficient to address defendants' concerns about the types of documents it wants to protect and the use that plaintiffs could make of them. (Dckt. #126 at 13). After its own review, the Court agrees.

In particular, Paragraph 3 of the Amended Order permits a party to designate any information "the disclosure of which will result in a defined and serious injury" as "confidential – for attorney's eyes only." (Dckt. #103 at ¶3). That is the same standard that Rule 26(c)(1) requires to protect the type of sensitive business information that defendants assert that they have inadvertently produced. *See, e.g., Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D.Ill. 1998); *Alexander Hous. LLC v. Int'l Bhd. of Elec. Workers*, No. 04 C 1650, 2004 WL 1718654, at *3 (N.D.Ill. July 29, 2004). Plaintiffs do not object to defendants' use of the AEO designation for their sensitive information. (Dckt. #126 at 13). Consequently, documents that would fall within

---

[3] Plaintiffs dispute defendants' claim that all of the redacted information is irrelevant. In their response, plaintiffs attached unredacted and redacted copies of six email chains and pointed out how defendants redacted relevant information from the version of these email chains that they produced with their Altered Production. (Dckt. #126 at 10-11). In their reply, defendants asserted that the material redacted from these email chains is, in fact, irrelevant to plaintiffs' claims. (Dckt. #132 at 8-9). The Court need not resolve the parties' dispute regarding the relevance of the redactions from these six email chains or address the claimed irrelevance of the totality of the redactions that defendants made with their Altered Production. Even presuming that defendants have only redacted information that is irrelevant to plaintiffs' claims, their motion for a protective order fails for the other reasons stated herein.

7

the defendants' proposed protective order based on their sensitivity are also protected by an AEO designation under the parties' Amended Order.

Nonetheless, defendants – who concede in their reply that the Amended Order protects "relevant, confidential documents" – assert that the Amended Order does not cover "irrelevant, highly sensitive materials." (Dckt. #132 at 10). The Court disagrees. The Amended Order does not distinguish between information that is relevant or irrelevant nor does it suggest that non-relevant documents that are labelled as "confidential" are not protected. Rather, the Amended Order protects *all* documents that a party designates as confidential unless the opposing party contests that designation through procedures that are carefully set out in the Order.

The Amended Order also addresses defendants' professed concern that plaintiffs plan to improperly use the irrelevant yet sensitive unredacted portions of the Original Production. (Dckt. #132 at 2-3). Plaintiffs are not at liberty to ignore the new confidentiality designations that defendants made in the Altered Production. Paragraph 7 of the Amended Order states that when "a party designates a document as Confidential Information after it was initially produced, the receiving party, on notification of the designation, must make a reasonable effort to assure that the document is treated in accordance with the provisions of this Order." (Dckt. #103 at ¶7). That is what took place in this case when defendants made new confidentiality designations in the Altered Production. Paragraph 10 of the Amended Order also sets out procedures for challenging a confidentiality designation, but neither party suggests that plaintiffs have contested any of defendants' new confidentiality claims by invoking those procedures. Not having done so, plaintiffs are obligated to honor the new confidentiality designations that defendants have made. (*Id.*, stating that other parties "must make a reasonable effort to assure that the [newly designated] document is treated in accordance with the provisions of this Order").

8

The Amended Order also places severe restrictions on how plaintiffs can use information that defendants designate as AEO. Access to documents designated as AEO is limited to counsel, experts, the court, and potential witnesses who created the documents, authorized them, or were their intended recipients. (Dckt. #103 at ¶6(b)(10)). The Amended Order also restricts the ways in which any third party who reviews an AEO document can use the information it contains. Each third party is required to sign a copy of Exhibit A attached to the Amended Order. Exhibit A states that the signing party has read the Amended Order, agrees to use confidential information only for purposes of the litigation or an arbitration proceeding, and will not "disclose any such Confidential Information to any other person, firm, or concern." (*Id.* at Ex. A). It also requires the reviewing party to acknowledge that violating these provisions could lead to a contempt of court finding. (*Id.*). Finally, the fact that the information that defendants want to protect with their proposed protective order is allegedly irrelevant makes it is difficult to see how plaintiffs would be able to use it in any form. Irrelevant documents are inadmissible at trial, and the Amended Order would not permit plaintiffs to disclose their contents in any other proceeding except arbitration – where their irrelevance would also presumably render them useless.

C. **Defendants Have Failed To Substantiate the Harm They Will Experience Without A Protective Order**

In order to protect confidential business information under Rule 26(c)(1), a party must "prove that disclosure will result in a clearly defined and very serious injury to its business." *Andrew Corp.*, 180 F.R.D. at 341. Defendants have made significant changes to the Original Production[4] yet they have not submitted any examples of the Altered Production's redactions or

---

[4] Plaintiffs explain – and defendants do not dispute – that the Original Production contained 7,000 documents that included nearly 20,000 pages. The Altered Production's changes involved over 600 "slip

cited the changes that were made. Instead, they describe the newly-redacted documents in broad terms as "board minutes and presentations that deal with JVMC's other subsidiaries, including discussion[s] of business development strategies, financial results and financial decisions, business prospects and analysis of potential new clients, as well as irrelevant regulatory matters and global company financial decisions." (Dckt. #114 at 7). Defendants have not submitted an affidavit or any other support for these claims, however, and rely exclusively on their attorneys' narrative descriptions of the redacted documents.

It is well established that a protective order cannot be issued based on the kind of conclusory and non-specific allegations of injury that defendants have made. As the Third Circuit has held, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (citing cases); *Duling v. Gristede's Operation Co.*, 266 F.R.D. 66, 76 (S.D.N.Y. 2010); *see also Lee v. Chicago Youth Centers*, 69 F.Supp.3d 885, 888 (N.D.Ill. 2014) ("unsupported statements of lawyers in briefs are not evidence, do not count, and are given no weight") (citing cases). Instead, "[t]here must be specific facts and examples supporting the asserted harm," *Takata v. Hartford Comprehensive Employee Ben. Serv. Co.*, 283 F.R.D. 617, 621 (E.D.Wash. 2012); *see also Deford v. Schmid Prods. Co.,* 120 F.R.D. 648, 653 (D.Md.1987) (requiring "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

A party's failure to provide specific examples of harm prevents a court from exercising its discretion to enter a protective order under Rule 26(c). *Harrisonville Tel. Co. v. Illinois*

---

sheets" stating that a formerly-produced page had been "Intentionally Left Blank," and the new redactions to other documents are even "far greater" than these 600 removed pages. (Dckt. #126 at 6).

*Commerce Comm'n*, 472 F.Supp.2d 1071, 1077 (S.D.Ill. 2006) (citing cases). Because defendants have failed to make any specific showing of the injury they will experience if the redacted information is not destroyed, their motion for a protective order will be denied for this reason as well.

> **D.     Rule 37(a)(5)(B) Requires Defendants To Pay The Reasonable Expenses Incurred By Plaintiffs In Opposing This Motion**

Plaintiffs argue that the Court should require defendants to pay the expenses that they incurred in responding to defendants' motion pursuant to Federal Rule 37(a)(5)(B). That Rule provides that when a motion for protective order is denied, the court

> *must*, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(5)(B) (emphasis added). As the Rule's language suggests, the payment of fees is mandatory under Rule 37(a)(5)(B) absent a showing of substantial justification or mitigating circumstances. *See Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786-87 (7th Cir. 1994) ("The great operative principal of Rule 37(a)[(5)(B)] is that the loser pays."). Moreover, "[t]he burden of persuasion is on the losing party to avoid assessment of expenses and fees rather than on the winning party to obtain such an award." *Steadfast Ins, Co. v. Auto Mktg. Network, Inc.*, No. 97 C 5696, 1999 WL 446691, at *1 (N.D.Ill. June 23, 1999).

Defendants claim that "substantial justification" exists because their motion presents "an issue about which reasonable people could genuinely differ." (Dckt. #132 at 11, *quoting Steadfast Ins, Co.*, 1999 WL 446691, at *2). The Court respectfully disagrees with that contention. As explained above, defendants have failed to offer any pertinent legal authority to support their argument that plaintiffs should be forced to destroy the allegedly irrelevant

11

documents that they voluntarily – though inadvertently – produced and they did not address the case law that is contrary to their position. Defendants have further failed to justify the need for their proposed protective order because they did not show that the Amended Order is insufficient to address their concerns or that they will experience concrete harm to their business interests if their motion is denied. Finally, there is no evidence of mitigating circumstances that would render an award against defendants unjust. The Court therefore finds that substantial justification does not exist for the filing of this motion and that defendants should pay plaintiffs' reasonable expenses incurred in responding to this motion pursuant to Rule 37(a)(5)(B).

## CONCLUSION

For all of the reasons stated above, defendants' motion for a protective order [Dckt. #114] is denied. Defendants are ordered to defendants should pay plaintiffs' reasonable expenses incurred in responding to this motion pursuant to Rule 37(a)(5)(B).

ENTER:

_____
**Hon. Jeffrey Cummings
United States Magistrate Judge**

**Dated: May 8, 2020**